UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

CONTINENTAL CASUALTY COMPANY,    :
    :
               Plaintiff,    :
    :
    - against -    :
    :
ACE AMERICAN INSURANCE COMPANY,    :
    :
               Defendant.    :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: March 31, 2009
```

07 Civ. 958 (PAC)


OPINION & ORDER

HONORABLE PAUL A. CROTTY, United States District Judge:

Plaintiff Continental Casualty Company ("Continental") seeks a declaratory judgment against Defendant ACE American Insurance Company ("ACE") that Continental is not liable on an insurance policy (the "Policy") between the parties. Continental agreed to insure ACE for losses related to ACE's claims handling on behalf of its insured clients. In 2004, one of ACE's insured clients, Pilgrim's Pride Corporation ("Pilgrim's Pride"), sued ACE in Texas state court alleging bad faith claims handling. ACE settled the lawsuit and sought reimbursement from Continental pursuant to the Policy, which Continental refused to provide.

Continental moves for summary judgment, arguing that it is not liable to ACE for its settlement with Pilgrim's Pride because: (1) ACE did not adhere to the Policy's "consent-to-settlement" provision before settling the Pilgrim's Pride lawsuit; and (2) the Policy requires allocation of the settlement amount between insured and uninsured loss, and once uninsured losses are deducted, the total insured loss for which Continental would be liable is less than the Policy's $10 million deductible.

ACE cross-moves for summary judgment, claiming that it adhered to the consent-to-settlement provision and that the entire settlement amount comprises insured loss, meaning that

the Court need not engage in an allocation of insured and uninsured loss to determine

Continental's liability.

For the reasons that follow, Continental's motion for summary judgment is GRANTED

and ACE's cross-motion for summary judgment is DENIED.

## BACKGROUND

**I.     Facts**[1]

Continental issued the Policy to ACE in July 1999.  Under the terms of the Policy,

Continental agreed to provide coverage to ACE for losses from lawsuits alleging bad faith in its

claims handling.

Four provisions of the Policy bear on the present motions.  First, claims were subject to a

$10 million deductible.  (<u>See</u> Compl. Ex. A ("Policy") at 2.)  Second, the Policy contained a

consent-to-settlement provision, under which ACE agreed that it would not:

> admit liability, consent to any judgment, agree to any settlement or make
> any settlement offer without [Continental's] prior written consent, such
> consent not to be unreasonably withheld.  [Continental] shall not be liable
> for any Loss incurred by [ACE] admitting liability, consenting to any
> judgment, agreeing to any settlement or making any settlement offer
> without [Continental's] prior written consent.

(<u>Id.</u> Ex. A at 8.)  Third, the Policy defined "loss" as:

> damages, settlements, judgments (including any award of pre-judgment
> and post-judgment interest) and Defense Costs….Loss shall not include (i)
> criminal or civil fines or penalties imposed by law….Loss shall include
> punitive damages, exemplary damages, and the amount of any multiplied
> damage award which is in excess of the damage award so multiplied, if
> insurable to the fullest extent permitted by any applicable law.

(<u>Id.</u> Ex. A at 33.)  Finally, the Policy contained an allocation provision stipulating that if a claim

"includes both covered and uncovered matters….there may be an allocation between insured and

---

[1] Unless otherwise noted, the facts in this section are derived from the parties' statements of fact submitted pursuant
to Local Rule 56.1.

uninsured loss.  [ACE and Continental] shall exert their best efforts to agree upon a fair and proper allocation between insured and uninsured loss….”  (Id. Ex. A at 9.)

In 2004, Pilgrim's Pride sued ACE in Texas state court, alleging that ACE unjustifiably refused to pay a significant portion of coverage owed to Pilgrim's Pride as the result of a listeria outbreak at one of Pilgrim's Pride's food processing plants.  ACE informed Continental of the lawsuit by letter shortly after it was filed.

ACE and Pilgrim's Pride attended mediation on March 21, 2005, but were unable to reach an agreement.  The mediator then solicited confidential settlement offers from both parties and, on March 22, sent the parties a proposal under which ACE would pay Pilgrim's Pride $11.68 million in exchange for a release of Pilgrim's Pride's remaining claims.  The parties reviewed the proposal on March 23 and ACE made certain changes, which it returned to the mediator.  During a conference call on March 24, ACE informed Continental of the mediator's proposed settlement agreement.  Continental requested additional information, which ACE provided in letters dated March 29 and April 15.  Continental sent a letter to ACE denying coverage for the settlement on June 16.

## II.    Cross-Motions for Summary Judgment

Both Continental and ACE move for summary judgment.  The issues presented by these motions are: (1) whether ACE satisfied the Policy's consent-to-settle provision; and (2) whether, pursuant to the Policy, ACE's settlement with Pilgrim's Pride must be allocated between insured and uninsured loss and, if so, whether there are any insured losses beyond the $10 million deductible for which Continental would be liable.

With respect to the consent-to-settle provision, Continental claims that, as of March 23, 2005, the mediator's proposal constituted a binding agreement under Texas law because it

memorialized ACE's and Pilgrim's Pride's agreements on the essential terms of settlement, i.e. the amount of consideration to be paid and the release of all outstanding claims.  (Pl. Mem. in Support of Summ. Judg. ("Pl. Mem.") at 18-19.)  Continental argues that ACE entered into this settlement without Continental's consent, in direct violation of the Policy's language. Accordingly, Continental's denial of coverage is appropriate.  (See id. at 19.)

Moreover, Continental claims that even if ACE had satisfied the consent-to-settle provision, it has no liability to ACE because once penalties and multiple damages—which are not covered by the Policy's definition of loss and are therefore uninsured—are subtracted from the final settlement of $11.68 million, the amount of potentially insured loss is less than ACE's $10 million deductible.  (Id. at 19-25.)

ACE urges that it did not violate the consent-to-settle provision because the matter was not settled on March 23 as Continental claims.  (Def. Mem. in Support of Summ. Judg. ("Def. Mem.") at 13.)  Instead, ACE did not finally settle until April 22, by which time it had provided Continental with ample notice regarding the proposal settlement.  Given that notice, Continental's refusal to consent to the settlement was unreasonable, and therefore constitutes a breach of the Policy.  (Id. at 6-16.)

ACE also argues that the Policy's allocation provision does not apply to the settlement because ACE did not pay any penalties or punitive damages.  (Def. Opp. to Pl. Motion for Summ. Judg. ("Def. Opp.") at 12-22.)  The entire payment of $11.68 million comprises a single settlement, and settlements are expressly included within the Policy's definition of loss. Consequently, there is no need to allocate the settlement amount between insured and uninsured loss, and Continental is liable for $1.68 million—i.e. the amount of the settlement beyond ACE's deductible under the Policy—plus attorneys' fees.  (Id. at 12-13.)

**DISCUSSION**

**III.    Legal Standard for Motions for Summary Judgment**

Summary judgment is appropriate where the record demonstrates that "there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  A fact is material if it "might affect the outcome of the suit under governing law…." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  The moving party bears the initial burden of producing evidence on each material element of its claim or defense demonstrating that it is entitled to relief.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  The evidence on each material element must be sufficient to entitle the movant to relief as a matter of law.  Vt. Teddy Bear Co., Inc. v. 1-800 Beargram Co., 373 F.3d 241, 244 (2d Cir. 2004).

Once the moving party has made an initial showing that no genuine issue of material fact remains, the nonmoving party may not refute this showing solely by means of "[c]onclusory allegations, conjecture, and speculation," Niagara Mohawk Power Corp. v. Jones Chem., Inc., 315 F.3d 171, 175 (2d Cir. 2003) (internal citations and quotations omitted), but must instead present specific evidence in support of its contention that there is a genuine dispute as to material facts.  Fed. R. Civ. P. 56(e).  The Court resolves all ambiguities and draws all factual inferences in favor of the nonmovant, but "only if there is a 'genuine' dispute as to those facts." Scott v. Harris, 127 S.Ct. 1769, 1776 (2007) (citing Fed. R. Civ. P. 56(c)).

The same standard of review applies when the court is faced with cross-motions for summary judgment.  Morales v. Quintel Entm't, Inc., 249 F.3d 115, 121 (2d Cir. 2001).  Each party's motion must be reviewed on its own merits, and the Court must draw all reasonable inferences against the party whose motion is under consideration.  Id.

**IV.     Satisfaction of the Consent-to-Settle Provision**

Under New York law, consent-to-settle provisions are a condition precedent to coverage

and are routinely enforced.  See TLC Beatrice Int'l Holdings v. Cigna Ins. Co., No. 97 Civ.

8589, 2000 WL 282967, at *4 (S.D.N.Y. Mar. 16, 2000), aff'd 234 F.3d 1262 (2d Cir. 2000).

"[U]nambiguous provisions…must be given their plain and ordinary meaning, and the

interpretation of such provisions is a question of law for the court."  Vigilant Ins. Co. v. Bear

Stearns Co., Inc., 855 N.Y.S.2d 45, 48 (2008) (citation and internal quotation marks omitted).

On its face, the consent-to-settle provision in the present Policy prohibits ACE from

entering into any settlement before first obtaining prior written consent from Continental.

(Compl. Ex. A at 8.)  Failure to obtain such consent absolves Continental of any liability for

payment under the settlement.  (Id.)

As of March 23, ACE did not possess written consent from Continental to enter into a

settlement with Pilgrim's Pride.  The key question for this Court, then, is whether the mediator's

March 23 proposal constituted a binding and enforceable settlement agreement, such that ACE's

assent to its terms amounted to a violation of the consent-to-settle provision.

The Court assesses the March 23 proposal under Texas law.  See Zurich Ins. Co. v.

Shearson Lehman Hutton, Inc., 84 N.Y.2d 309 (1994) (holding that New York courts interpret

contracts under the law of the state with the most significant relationship to the transaction).  In

Texas, settlement agreements are legally enforceable where the parties have agreed on the

amount of consideration to be paid and the release of claims.  See Padilla v. LaFrance, 907

S.W.2d 454, 460-61 (Tex. 1995); Disney v. Gollan, 233 S.W.3d 591, 595-96 (Tex. App. – Dallas

2007); CherCo Properties, Inc. v. Law, Snakard & Gambill, P.C., 985 S.W.2d 262, 265-66 (Tex.

App. – Ft. Worth 1999).  Any writings may constitute a binding agreement so long as they

demonstrate a meeting of the minds on these essential terms.  See, e.g., Padilla, 907 S.W.2d at 460-61 (finding that a series of letters between the parties constituted an enforceable settlement agreement).

The mediator's March 23 proposal constituted a binding and enforceable settlement agreement.  First, the proposal stated that ACE would pay Pilgrim's Pride $11.68 million—the exact amount that ACE ultimately paid to settle the matter.  (See Def. Appendix Vol. 2 Ex. 34 ("Mediator's Proposal") at ACE 000068 ¶ 1.)  Second, Ace and Pilgrim's Pride agreed to "execute mutual general releases relating to the matters or the Policy that were the subject of the Litigation…."  (Id. ¶ 3.)  In other words, there was a meeting of the minds on the material terms of a settlement agreement.

ACE argues that there was no meeting of the minds on the March 23 proposal because ACE suggested certain revisions dealing with the release of claims.  (See Def. Opp. at 5-6.) Specifically, ACE argues that the changes it made to paragraph 6 of the proposal demonstrate that the parties had not agreed to all of the terms of the release.  (See Def. Appendix Vol. 2 Ex. 36).  This argument is unavailing for several reasons.  First, ACE's proposed changes to paragraph 6 do not, on their face, alter the core of the settlement, i.e. ACE's agreement to pay $11.68 million in exchange for a release of claims.  Instead, ACE merely adds language stating that the agreement does not "constitute a waiver or prejudice ACE American's rights under any liability policy," which by its terms has nothing whatsoever to do with Pilgrim's Pride.  (See id.) Second, under Texas law, once an agreement is sufficient on its face, it is enforceable even if one party withdraws consent before the agreement is consummated.  See Padilla, 907 S.W.2d at 461 ("Although a court cannot render a valid agreed judgment absent consent at the time it is rendered, [the court may] enforc[e] a settlement agreement complying with Rule 11 even though

one side no longer consents to the settlement.").  In other words, even if ACE did have certain qualms about the release provisions of the March 23 agreement vis-à-vis some other third party, these qualms would not have prevented either party to the settlement from enforcing the agreement in Texas state court.  Third, Pilgrim's Pride expressed its assent to the proposed changes almost immediately.  (See Def. Appendix Vol. 2 Ex. 37 (e-mail correspondence indicating that Pilgrim's Pride knew of ACE's proposed changes and "did not believe any of those were a problem").)  In fact, on March 23, Pilgrim's Pride's counsel sent a letter to the court indicating that "the parties have settled this lawsuit."  (Aff. of S. Dwight Stephens ("Stephens Aff.") Ex. KK at ACE-BB-01340.)  It is clear, then, that ACE's changes were, at best, no more than minor revisions of a settlement agreement that was otherwise final.

ACE entered into a valid and binding settlement agreement with Pilgrim's Pride on March 23, 2005.  It did not seek Continental's consent to enter into such an agreement until March 24, and it never received prior written consent as required by the Policy.  As such, ACE violated the Policy's consent-to-settle provision and Continental has no liability to ACE for the Pilgrim's Pride settlement.

**V.      Allocation of the Settlement between Insured and Uninsured Loss**

Having determined that ACE violated the Policy's consent-to-settle provision, the Court need not undertake a full analysis of the allocation of the Pilgrim's Pride settlement between insured and uninsured loss.  It is clear, however, that the Policy provides for such allocation of settlements.  (Compl. Ex. A at 9.)  Moreover, once uninsured loss is deducted from the $11.68 settlement amount, the remaining insured loss for which Continental would be liable is less than the Policy's $10 million deductible.  The Policy's definition of loss specifically excludes civil penalties and punitive damages.  Article 21.55 of the Texas Insurance Code imposes a statutory

interest rate of 18% per year for an insurer's failure to timely investigate a policyholder's claims. Texas Ins. Code art. 21.55 § 6. Moreover, Article 21.21 of the Texas Insurance Code provides that multiple damages must be assessed at "two times the amount of actual damages." Id. art. 21.21 § 16(b)(1). As ACE's internal settlement communications indicated, ACE faced significant potential exposures under these statutes if its dispute with Pilgrim's Pride went to trial. (See, e.g., Stephens Aff. Exs. E, M, N, O, V.) Under the Policy's allocation provision, deduction of ACE's potential exposure under Articles 21.55 and 21.21 is appropriate and would leave Continental liable for a total insured loss less than the Policy's $10 million deductible.

## CONCLUSION

For the foregoing reasons, Defendant Continental Casualty's motion for summary judgment is GRANTED and Plaintiff ACE's motion for summary judgment is DENIED. The Clerk of the Court is directed to enter judgment and terminate this matter.

Dated: New York, New York
       March 31, 2009

SO ORDERED

PAUL A. CROTTY
United States District Judge

9